| | |
|---|---|
| AMY KENNEDY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ABBOTT LABORATORIES, INC., )<br>et. al, )<br>)<br>Defendants. ) | **ORDER** |

On January 9, 2020, Amy Kennedy ("plaintiff" or "Kennedy") filed a complaint against Abbott Diabetes Care Sales Corporation ("ADC" or "defendant") [D.E. 1-1]. On April 29, 2021, ADC removed the action from Wake County Superior Court [D.E. 1]. On July 15, 2022, ADC moved for summary judgment [D.E. 29] and filed a statement of material facts [D.E. 30] and appendix [D.E. 31].[1] On September 6, 2022, Kennedy responded in opposition [D.E. 35]. On October 4, 2022, ADC replied [D.E. 37]. As explained below, the court grants ADC's motion for summary judgment.

---

[1] ADC submitted a separate statement of material facts with its motion for summary judgment, but Kennedy did not file a separate opposing statement of material facts responding to ADC's statement. Compare [D.E. 30] with [D.E. 35]. Therefore, ADC's statement of material facts is admitted for the purpose of ADC's motion for summary judgment pursuant to Local Rule of Civil Procedure 56.1(a)(2). See Local R. Civ. P. 56.1(a)(2) ("Each numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement."); Williamson v. Bridgestone Ams., Inc., ___ F. Supp. 3d ___, No. 5:20-CV-377, 2022 WL 4084413, at *3 (E.D.N.C. Sept. 6, 2022); Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir. 2017) (per curiam) (unpublished); United States v. Compassionate Home Care Servs., Inc., No. 7:14-CV-113, 2017 WL 1030706, at *1 n.1 (E.D.N.C. May 15, 2017) (unpublished).

I.

From 2015 to 2017 Kennedy worked for ADC as a Senior Regional Account Manager. See [D.E. 30] ¶ 4. Kennedy's job required her to make "'calls,' meaning on-site visits to customer locations to have strategic meetings with key customer contacts and to investigate opportunities for ADC's business." Id. at ¶¶ 6, 9. From January 1, 2016, to September 2017, Senior National Account Manager Matt Ezzo ("Ezzo") supervised Kennedy. See id. at ¶ 10.

In July 2016, Ezzo counseled Kennedy for completing only two customer calls in the seven months between January and July 2016. See id. at ¶ 12. In September 2016, Ezzo received a call from the Vice President of one of Kennedy's assigned customers, who complained that he had not heard from Kennedy and that Kennedy had not visited in three years. See id. at ¶ 13. At the end of 2016, Ezzo completed Kennedy's annual performance review. See id. at ¶ 17. Ezzo rated Kennedy in three competencies, and Kennedy received the lowest possible rating, a minus, for "relative contribution to long-term strategy." Id. at ¶ 18; see id. at ¶¶ 13–16. Ezzo discussed Kennedy's performance review with her and reminded Kennedy that she needed to call her assigned customers more frequently and that ADC was implementing new customer call frequency requirements to take effect for her position in 2017. See id. at ¶¶ 19–21.

In 2017, Kennedy continued to make calls below ADC's requirements and performed deficiently in other ways. See id. at ¶¶ 32–42. Kennedy made only three customer calls from January through May 2017, including a nearly three-month period where she did not make any calls. See id. at ¶ 32. Kennedy also failed to complete other required employee exercises, failed to register for employee meetings on time, failed to submit all required estimates and reports, submitted false reports, and failed to respond to supervisory inquiries about her missing reports and other performance deficiencies. See id. at ¶¶ 33–42.

2

On June 2, 2017, Ezzo contacted ADC's Employee Relations ("ER") department to seek guidance on managing Kennedy's ongoing deficient performance. See id. at ¶ 43. On September 28, 2017, after continued issues with Kennedy, ER Manager Nitorshi Wilson prepared an ER Recommendation for Termination Worksheet that documented the performance deficiencies supporting Kennedy's termination. See id. at ¶¶ 44–45. Ezzo then drafted, delivered, and discussed with Kennedy a formal performance memorandum identifying areas Kennedy needed to demonstrate immediate improvement or risk employment termination. See id. at ¶ 46–47.

On June 16, 2017, Kennedy spoke to Ezzo's superior, General Director Katie Spayde, about her 2016 performance evaluation. See id. at ¶ 49. Kennedy did not raise any concerns about mistreatment based on her sex. See id. at ¶¶ 49–55. On July 5, 2017, Kennedy submitted a rebuttal ("complaint") for her December 2016 performance review. See id. at ¶ 56. In her complaint, Kennedy did not raise any concerns about mistreatment based on her sex. See id. at ¶ 57. ER investigated Kennedy's concerns and determined that her claims were unfounded, that she had been appropriately managed with reasonable expectations, and that her performance review should remain unchanged. See id. at ¶ 58.

On September 20, 2017, Wilson asked Ezzo for an update on Kennedy's performance. See id. at ¶ 59. As of September 25, 2017, Kennedy had made only eleven customer calls (less than half of her annual minimum), and she had not called five of her accounts even once in 2017. See id. at ¶ 61. Kennedy also had canceled and failed to reschedule customer calls, improperly used her company credit card, and missed meetings. Ezzo and Wilson recommended Kennedy's termination based on ongoing performance deficiencies. See id. at ¶¶ 62–67. On September 29, 2017, ADC notified Kennedy of her termination, and ADC later replaced Kennedy with another female employee. See id. at ¶¶ 71–72.

3

On March 26, 2018, Kennedy filed an EEOC charge under Title VII alleging sex discrimination and retaliation concerning her termination. See [D.E. 1-1] 23–24. On September 25, 2019, the EEOC issued a dismissal and right to sue notice to Kennedy. See id. at 25–26.

On January 9, 2020, Kennedy filed a complaint in Wake County Superior Court against ADC alleging that ADC terminated her employment because of her sex in violation of Title VII and in retaliation for protected activity in violation of Title VII (count one) and created a retaliatory hostile work environment in violation of Title VII (count two). See [D.E. 1-1] ¶¶ 35–48. On June 6, 2020, Kennedy renewed the summons. See [D.E. 30] ¶ 75. Before June 6, 2020, the most recent summons issued to ADC was dated January 9, 2020. See id. at ¶ 76. No summons was issued to ADC between January 9, and June 6, 2020. See id. at ¶ 77. On March 30, 2021, Kennedy renewed the summons to ADC. See id. at ¶ 74. On April 29, 2021, ADC removed the action from Wake County Superior Court to this court. See [D.E. 1] On July 15, 2022, ADC moved for summary judgment and filed a statement of material facts and appendix. See [D.E. 29–31]

II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v.

4

Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 378.

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

A.

Under Rule 4(c) of the North Carolina Rules of Civil Procedure, a plaintiff must serve the complaint within 60 days after the date of issuance of the summons. See N.C. Gen. Stat. § 1A–1, Rule 4(c). If a defendant is not served within the prescribed period of time, Rule 4(d) provides that service may be extended provided that the plaintiff (1) obtains either an endorsement upon the original summons "within 90 days after the issuance of summons or the date of the last prior endorsement" or (2) obtains an alias or pluries summons "within 90 days after the date of issue of the last preceding summons in the chain of summonses or within 90 days of the last prior endorsement." N.C. R. Civ. P. 4(d)(1), (2). If a plaintiff fails to secure an endorsement or an alias or pluries summons in the time allowed by Rule 4(d), Rule 4(e) provides that:

5

> the action is discontinued as to any defendant not theretofore served with summons within the time allowed. Thereafter, alias or pluries summons may issue, or an extension endorsed by the clerk, but, as to such defendant, the action shall be deemed to have commenced on the date of such issuance or endorsement.

N.C. R. Civ. P. 4(e).

Between January 9, 2020, when Kennedy first filed the action, and June 6, 2020, when Kennedy finally renewed summons to ADC, Kennedy failed to renew summonses to ADC every 90 days in accordance with N.C. Gen. Stat. § 1A–1. See [D.E. 30] ¶¶ 73–77; [D.E. 1, 1-1, 1-2, 1-3]. Therefore, this action began on June 6, 2020, which is beyond the 90-day deadline to file a lawsuit after Kennedy received the right to sue notice. Because Kennedy failed to maintain the summons against ADC, by operation of North Carolina law, the action was discontinued. Accordingly, the court grants summary judgment to ADC. See, e.g., Ghee v. Walmart Stores East L.P., No. 4:21-CV-39, 2021 WL 4691135, at * 1–2 (E.D.N.C. Oct. 7, 2021) (unpublished); Harris v. Maready, 311 N.C. 536, 542, 319 S.E.2d 912, 916 (1984).

B.

Alternatively, even if Kennedy properly served ADC, and even viewing the evidence in the light most favorable to Kennedy, no rational jury could find that ADC engaged in sex discrimination under Title VII. Kennedy lacks direct evidence of sex discrimination; therefore, she relies on the burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, Kennedy first must establish a prima facie case of sex discrimination by showing that (1) she is a member of a protected class; (2) she was discharged; (3) she was fulfilling her employer's legitimate expectations at the time of her discharge; and (4) the discharge arose under circumstances permitting a reasonable inference of sex discrimination. See McDonnell Douglas Corp., 411 U.S. at 807; see, e.g., Sempowich v. Tactile Sys. Tech. Corp., 19 F.4th 643, 649–50 (4th

Cir. 2021); Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc), abrogated in part on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013); Miles v. Dell, Inc., 429 F.3d 480, 485–89 (4th Cir. 2005). If Kennedy succeeds in proving her prima facie case, the burden shifts to ADC to articulate a legitimate, nondiscriminatory reason for Kennedy's discharge. See, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506–09 (1993); Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 254 (1981). If ADC carries this burden of production, Kennedy must demonstrate that a genuine issue of material fact exists concerning whether ADC's reason for Kennedy's termination was a pretext for sex discrimination. See, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); Burdine, 450 U.S. at 253–56; Hux v. City of Newport News, 451 F.3d 311, 315 (4th Cir. 2006); Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 514 (4th Cir. 2006); Hill, 354 F.3d at 298; King v. Rumsfeld, 328 F.3d 145, 150–54 (4th Cir. 2003).

A plaintiff can prove pretext by showing that the alleged nondiscriminatory "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [sex] discrimination." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (quotation omitted); Reeves, 530 U.S. at 147. In analyzing the record concerning pretext, the court does not sit to decide whether the employer in fact discriminated against the plaintiff on the basis of sex. See, e.g., Holland v. Washington Homes, Inc., 487 F.3d 208, 217 (4th Cir. 2007); Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279–80 (4th Cir. 2000). Rather, the court focuses on whether the plaintiff has raised a genuine issue of material fact as to pretext under Reeves and its Fourth Circuit progeny. Under Reeves and its Fourth Circuit progeny, a plaintiff may not "simply show the articulated reason is false; [s]he must also show that the employer discriminated against h[er] on the basis of [sex]." Laber v. Harvey, 438 F.3d 404, 430–31 (4th Cir. 2006) (en banc). In certain cases, however, the

7

factfinder may infer illegal discrimination from the articulated reason's falsity. See id. at 431; Sempowich, 19 F.4th at 651 n.2; Rowe v. Marley Co., 233 F.3d 825, 830 (4th Cir. 2000).

An employer is entitled to summary judgment on the issue of pretext if the employee "create[s] only a weak issue of fact as to whether the employer's reason [is] untrue and there [is] abundant and uncontroverted independent evidence that no discrimination had occurred." Reeves, 530 U.S. at 148. Moreover, "a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for a discharge." Dockins v. Benchmark Commc'ns, 176 F.3d 745, 749 (4th Cir. 1999) (quotation omitted). Terminating an employee for poor performance is not sex-related, and an employer lawfully can rely on poor performance in taking adverse employment action. See Mereish, 359 F.3d at 335; Hawkins, 203 F.3d at 280; Fisher v. Asheville–Buncombe Tech. Cmty. Coll., 857 F. Supp. 465, 469–70 (W.D.N.C. 1993).

In considering whether an employee was meeting her employer's legitimate expectations, "it is the perception of the [employer] which is relevant, not the self-assessment of the plaintiff." Hawkins, 203 F.3d at 280 (cleaned up); see Sempowich, 19 F.4th at 650; King, 328 F.3d at 149; Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980); McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 607 (E.D.N.C. 2006). Thus, an employee's own testimony about her job performance does not create a genuine issue of material fact concerning whether she was meeting her employer's legitimate expectations. See, e.g., King, 328 F.3d at 149; Hawkins, 203 F.3d at 280; Smith, 618 F.2d at 1067; Smith v. Martin, No. 5:10-CV-248, 2011 WL 3703255, at *5 (E.D.N.C. Aug. 23, 2011) (unpublished); O'Daniel v. United Hospice, No. 4:09-CV-72, 2010 WL 3835024, at *4 (E.D.N.C. Sept. 29, 2010) (unpublished); Lloyd v. New Hanover Reg'l Med. Ctr., 2009 WL

890470, at *9, aff'd, 563 F. App'x 944 (4th Cir. 2011) (per curiam) (unpublished); McDougal-Wilson, 427 F. Supp. 2d at 611.

Kennedy contends that ADC "treated [her] less favorably than the men on her team." [D.E. 35-1] 9. ADC, however, held all team members to the same customer call frequency standards based on their customer assignments. See [D.E. 30] ¶¶ 26–29. Kennedy was not meeting ADC's legitimate employment expectations at the time of her employment termination, and ADC applied those expectations to all employees regardless of sex. See id. at ¶¶ 12–14, 17–18, 32–43.

In opposition to this conclusion, Kennedy cites her employee reviews from 2015 to rebut ADC's evidence of her deficient performance in 2016 and 2017. See [35-1] 9; cf. [D.E. 30] ¶¶ 12–14, 17–18, 32–43. ADC, however, terminated Kennedy because of her performance deficiencies in 2016 and 2017, which included, low customer call numbers, customer complaints for failing to visit the customer in three years, and errors in documenting her expense and reimbursement reports. See [D.E. 30] ¶¶ 12–14, 17–18, 32–43. Notably, Kennedy received the lowest possible rating for contribution from her supervisor in 2016. See id. Simply put, Kennedy's performance reviews in 2015 do not create a genuine issue of material fact concerning whether Kennedy was meeting ADC's legitimate expectation at the time of her 2017 discharge. She was not.

Alternatively, ADC hired another woman to fill Kennedy's position after terminating Kennedy's employment. See [D.E. 30] ¶ 72. "[A]s a general rule, Title VII plaintiffs must show that they were replaced by someone outside their protected class in order to make out a prima facie case." Miles, 429 F.3d at 486. Even viewing the record in the light most favorable to Kennedy, no rational jury could find that ADC's reason for terminating Kennedy's employment was pretextual or that ADC treated Kennedy differently because of her sex. Thus, the court grants summary judgment to ADC on Kennedy's Title VII sex discrimination claim.

9

C.

As for Kennedy's sexually hostile work environment claim, Kennedy's EEOC charge did not include a sexually hostile work environment claim under Title VII. See [D.E. 1-1] 23–24 [D.E. 1-2] 23–24; [D.E. 1-3] 23–24. An individual alleging discrimination in violation of Title VII must first file a timely administrative charge with the EEOC. See 42 U.S.C. § 2000e–5(e)(1); Miles, 429 F.3d at 491. "The exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." Miles, 429 F.3d at 491. A plaintiff has not exhausted her administrative remedies unless the "'claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation.'" Id. (quoting Smith v. First Union Nat'l Bank, 202 F.3d 234, 247–48 (4th Cir. 2000)). A "claim will also typically be barred if the administrative charge alleges one type of discrimination . . . and the claim encompasses another type." Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005).

Kennedy's EEOC charge did not allege a sexually hostile work environment claim under Title VII. See [D.E. 1-1] 23–24; [D.E. 1-2] 23–24; [D.E. 1-3] 23–24. Moreover, to the extent Kennedy's complaint includes a sexually hostile work environment claim, the claim is not reasonably related to her EEOC charge such that the claim would have reasonably expected to follow from the administrative investigation of her termination due to alleged sex discrimination and retaliation. See Miles, 429 F.3d at 491–92; Chacko, 429 F.3d at 509; Bryant, 288 F.3d at 132–33. Thus, the court grants summary judgment to ADC on Kennedy's sexually hostile work environment claim.

Alternatively, even if Kennedy exhausted a sexually hostile work environment claim and even if her complaint includes such a claim, the claim fails. To state a prima face case for a sexually

10

hostile work environment claim, a plaintiff must plausibly allege, among other elements, unwelcome conduct that is based on her sex and "sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment." Guessous v. Fairview Prop. Inv., 828 F.3d 208, 221 (4th Cir. 2016) (quotation omitted); see Laurent-Workman v. Wormuth, __ F.4th __, ___, No. 21-1766, 2022 WL 17256701, at *4 (4th Cir. Nov. 29, 2022); Perkins v. Int'l Paper Co., 936 F.3d 196, 207–08 (4th Cir. 2019); Parker v. Reema Consulting Srvs., Inc., 915 F.3d 297, 302 (4th Cir. 2019); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (en banc); Okoli v. City of Balt., 648 F.3d 216, 220 (4th Cir. 2011); EEOC v. Fairbrook Med. Clinic, P.A., 609 F.3d 320, 327 (4th Cir. 2010); Ziskie v. Mineta, 547 F.3d 220, 224 (4th Cir. 2008); Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc). To determine whether the unwelcome conduct was sufficiently severe or pervasive, the court considers the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Okoli, 648 F.3d at 220 (quotation omitted); see Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270–71 (2001) (per curiam); Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81–82 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998); Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993); EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 314–16 (4th Cir. 2008). The "conduct must be extreme." Faragher, 524 U.S. at 788; see Sunbelt Rentals, 521 F.3d at 315 ("[P]laintiffs must clear a high bar in order to satisfy the severe or pervasive test.").

Viewing the evidence in the light most favorable to Kennedy, no rational jury could find that the alleged conduct is sufficiently severe or pervasive to constitute a sexually hostile work environment. See, e.g., Okoli, 648 F.3d at 220; Iskander v. Dep't of Navy, 116 F. Supp. 3d 669,

676–78 (E.D.N.C.), aff'd, 625 F. App'x 211 (4th Cir. 2015) (per curiam) (unpublished). Thus, the claim fails.

D.

As for Kennedy's retaliation claim, a plaintiff must prove that "the desire to retaliate was the but-for cause of the challenged employment action." Nassar, 570 U.S. at 352; see Villa v. CavaMezze Grill, LLC, 858 F.3d 896, 900 (4th Cir. 2017); Guessous, 828 F.3d at 216–17; Huckelba v. Deering, No. 5:16-CV-247, 2016 WL 6082032, at *3 (E.D.N.C. Oct. 17, 2016) (unpublished). "This but-for causation requirement is stricter than the lessened causation standard for discrimination claims, under which a plaintiff need only show that race, color, religion, sex, or national origin was a motivating factor for an adverse action by an employer." Netter, 908 F.3d at 938 (quotations omitted); see Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015). This causation standard "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Nassar, 570 U.S. at 360; see Guessous, 828 F.3d at 217. As such, "[n]aked allegations of a causal connection between plaintiff's protected activity and the alleged retaliation do not state a plausible Title VII claim." Huckelba, 2016 WL 6082032, at *3. "To establish a causal relationship between the protected activity and the termination, a plaintiff must show that the decision maker was aware of the protected activity at the time the alleged retaliation occurred." Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 124 (4th Cir. 2021).

To survive ADC's motion for summary judgment, Kennedy "must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998), abrogated on other grounds by Burlington N. & Santa Fe Ry. v. White, 548 U.S.

12

53, 68 (2006). In some cases, a plaintiff can establish a sufficient causal link by showing "the alleged adverse action occurred shortly after the employer became aware of the protected activity." Id.; see Williams v. Cerbetonics, Inc., 871 F.2d 452, 454, 457 (4th Cir. 1989). Generally, however, "[a] lengthy time lapse" between the protected activity and the adverse action "negates any inference that a causal connection exists between the two." Dowe, 145 F.3d at 657 (three years); Roberts, 998 F.3d at 127 (three months); Coleman v. Schneider Elec. USA, Inc., 755 F. App'x 247, 250 (4th Cir. 2019) (per curiam) (unpublished) (more than a year); Jones v. Constellation Energy Projects & Servs. Grp., Inc., 629 F. App'x 466, 469 (4th Cir. 2015) (per curiam) (unpublished) (nine months). Where there is a significant temporal gap, "evidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation." Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007). Moreover, a plaintiff also can rely on direct evidence of retaliation. See, e.g., Netter, 908 F.3d at 938; Foster, 787 F.3d at 249.

In June 2017, Kennedy made an internal complaint about her 2016 review. See [D.E. 30] ¶¶ 49–58; Dep. Exs. [D.E. 31-3] 153–58. Kennedy's June 2017 internal complaint did not refer to sex discrimination or allege conduct that violated Title VII. See [D.E. 30] ¶¶ 49–58; Dep. Exs. 153–58. Moreover, on July 6, 2021, Kennedy admitted in her deposition that she did not mention any conduct in her June 2017 internal complaint concerning illegal sex discrimination. See [D.E. 31-1] 102–03; [D.E. 31-4] ¶¶ 1–6. Where an employee's internal complaint merely concerns conduct not prohibited by Title VII, the internal complaint is not protected activity. See, e.g., Balazs v. Liebenthal, 32 F.3d 151, 159–60 (4th Cir. 1994). Because Kennedy did not engage in protected activity in June 2017, Kennedy fails to state a prima facie case for a Title VII retaliation claim.

Alternatively, even if Kennedy engaged in protected activity in June 2017, Kennedy cannot establish causation. First, there is no evidence that Ezzo knew of Kennedy's alleged protected

13

activity in June 2017 when he recommended terminating Kennedy's employment in September 2017. See [D.E. 30] ¶¶ 59–70. Second, and in any event, Ezzo had a legitimate, non-discriminatory reason for recommending that ADC terminate Kennedy's employment: poor performance. See id. at ¶¶ 12–19, 32–48, 61–69. Notably, Kennedy's poor performance pre-dated her June 2017 internal complaint and continued after her June 2017 internal complaint. See id. Because there is no evidence that Ezzo knew of Kennedy's June 2017 internal complaint and because Ezzo had a legitimate, non-discriminatory reason for recommending Kennedy's termination in September 2017, Kennedy cannot establish causation. Thus, the court grants summary judgment to ADC on Kennedy's Title VII retaliation claim.

Finally, to the extent that Kennedy alleges a Title VII retaliatory hostile work environment claim in her complaint, Kennedy failed to include such a claim in her EEOC charge. Thus, the claim is unexhausted and fails. Alternatively, even if exhausted, the claim fails on the merits. See, e.g., Faragher, 524 U.S. at 788.

III.

In sum, the court GRANTS defendant's motion for summary judgment [D.E. 29]. Defendant may file a motion for costs in accordance with the Federal Rules of Civil Procedure and this court's local rules. The clerk shall close the case.

SO ORDERED. This \_1\_ day of February, 2023.

JAMES C. DEVER III
United States District Judge